## ARGUED AND DETERMINED

IN THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS.

---

WALTER FARNSWORTH & another *vs.* CITY OF BOSTON.

Suffolk.   March 6. — Nov. 25, 1878.   COLT & SOULE, JJ., absent.

Under the St. of 1873, *c.* 340, obliging the city of Boston to take certain lands to abate a nuisance, and providing that any person, whose land is taken, may apply for a jury, by petition to the Superior Court, to assess his damages, a mortgagee of land so taken, who is out of possession, has not such an interest in the land as to entitle him to join with the owner of the equity of redemption in the petition for a jury.

PETITION to the Superior Court, filed originally by Walter Farnsworth alone, on December 18, 1876, for a jury to assess damages, for the taking by the respondent of a parcel of land in Boston, under the St. of 1873, *c.* 340.

On December 20, 1876, the Union Institution for Savings, which held a mortgage on the petitioner's land, dated June 2, 1871, and then due, filed, in the Superior Court, a petition setting forth its interest as mortgagee, and praying that it might join as a party in the petition filed by Farnsworth; and the court, against the respondent's objection, allowed this to be done.

At the trial in the Superior Court, before *Putnam*, J., it appeared that on September 1, 1873, the board of aldermen of the city of Boston passed an order establishing the grade of the

Northampton Street District, so called, in Boston, in which the petitioner's land was situated, in order to secure complete drainage, to prevent nuisances and to preserve the public health of the city; and on September 5, 1873, an order, passed by the city council, directing the owners of lands in the said district to raise the grade of their lands, was approved by the mayor.

The city entered upon the lands, raised the grade thereof, and assessed the cost thereof to the owners; and on March 8, 1875, the petitioner notified the city that he was dissatisfied with the assessment on his land, and offered to surrender his estate to the city. In November 1876, the city council passed an order taking the petitioner's land, which was approved by the mayor, and was recorded in the Suffolk registry of deeds on December 1, 1876; and Farnsworth, not agreeing with the city upon the damage done to him by such taking, filed this petition.

Farnsworth and the mortgagee agreed that the amount due upon the mortgage at the time of trial was $131,000.

The judge instructed the jury, if they should find the value of the land to exceed $131,000, to find for the Union Institution for Savings in the sum of $131,000, and for Farnsworth any excess of value above that sum; and, if they should find the value of the land to be less than $131,000, then to apply the whole to the claim of the Union Institution for Savings.

The jury found the value of the estate at the time of the taking to have been $142,381.83, and assessed the damages of Farnsworth at $11,381.83, and of the Union Institution for Savings at $131,000; and the judge reported the case for the consideration of this court.

If any of the rulings were erroneous, the verdict was to be set aside, and a new trial to be ordered; otherwise, judgment was to be entered on the verdict.

*J. P. Healy & E. P. Nettleton*, for the respondent.

*J. P. Treadwell*, for Farnsworth.

*J. A. Maxwell*, for the Union Institution for Savings.

LORD, J. The case of *Breed* v. *Eastern Railroad*, arising in Essex County, in 1840, and reported 5 Gray, 470, note, decides that, when land is taken for a public purpose, the damages for the taking are to be assessed to the owner of the equity of redemption, without regard to the question whether or not there

are mortgages upon it. The principle upon which that case is settled is decisive of this.

Whether, under the St. of 1873, *c.* 340, a taking because of a surrender by the owner is to be deemed a taking under the right of eminent domain, is not very material, inasmuch as the statute provides that the assessment of damages and the general mode of proceeding therein shall be determined in the same manner as when taken under such right, although, as matter of form, words implying purchase and sale are used.

It is wholly inconsistent with the objects and purposes of the act, that anything less than the whole estate should be surrendered by the person having the right to surrender. The proceeding is in the nature of a proceeding *in rem*, a proceeding against the land. By express provision of the statute, all necessary expenses incurred in the filling " shall constitute a lien upon the lands filled, and a lien upon all buildings upon such lands, and may be collected, and the city collector may purchase such lands, or lands and buildings, in behalf of the city; all as is provided by law for the collection of taxes upon real estate, and in case of land sold for taxes." Then follow provisions in relation to the mode of payment by " the owner of any estate so assessed," and proceedings for revision of the cost by a jury, which are not material in this case.

Section 4 provides that " any person dissatisfied with the assessment of the expense of raising the grade of his said land may give notice thereof to the city council within six months after such assessment is made, and the city shall thereupon take said land," and, after providing for the mode of recording a description of the land as so taken, the statute proceeds, " and the title to lands so taken shall vest absolutely in the city."

A mortgagee not in possession has no claim for compensation for injury to the land when lawfully used by any party. A mortgagee thus out of possession cannot be assessed for the improvements, nor does the statute recognize in him any estate in the land which he can surrender.

A mortgagor and mortgagee have no joint interest in lands as against third persons; nor have they distinct interests. Their estates are identical. As to the rest of the world, except the mortgagee, the entire estate is in the owner of the equity of

redemption; but, as between him and the mortgagee, the latter is the owner, not of another, but of the same estate. Having no joint interest, they cannot join, or be joined, in an application to assess the damages for the taking. Having no distinct estates in the same land, they cannot surrender severally. Whether the owner of a life estate and the remainderman can join in a proceeding of this kind, it is not necessary to decide. Entirely different considerations would affect that relation. But, in case of mortgagor and mortgagee, the owner of the equity is the only person entitled to surrender, though there may be one or many mortgagees of the same estate. See *Ballard* v. *Ballard Vale Co.* 5 Gray, 468, and *Paine* v. *Woods*, 108 Mass. 160. In equity, the damages assessed to the owner of the land would be deemed to be land, and the mortgagee could follow such assessed damages and have the same applied to the payment of his mortgage. *Pond* v. *Eddy*, 113 Mass. 149.

When these parties were before us on a former occasion, the only question presented and decided was, whether the present petitioner had a right, under the facts reported, to surrender his interest to the city and claim compensation therefor. *Farnsworth* v. *Boston*, 121 Mass. 173. The extent of the interest was not before the court, nor was it decided by the court. There are *dicta* in the opinion which would apparently limit his right to the value of the equity of redemption, although it is expressly said that "it is not necessary to consider what are the rights of the mortgagees to surrender." There would perhaps be greater difficulties in determining what is the value of an equity of redemption as between the city and the petitioner alone, than would exist if mortgagor and mortgagee were joint petitioners. It would be a trial between two parties, neither of whom could rightfully represent the mortgagee, upon whom the finding of the jury could not be binding.

The view which we take has been recognized, and its correctness sanctioned by the general railroad law of 1874. St. 1874, c. 372. That statute provides, that in all cases of the assessment of damages for lands taken for the construction or maintenance of a railroad, if the land for which damages are claimed is subject to mortgage, all mortgagors and mortgagees shall be made parties to the proceeding. §§ 76. 77. It recognizes the fact that, though

the land is mortgaged, the estate of the mortgagor and mortgagee is but one for the purpose of being valued. The interest of a mortgagee, as such, is not to be assessed; but the value of the estate is to be ascertained in a gross sum, by the county commissioners, or the jury, as the case may be. That gross sum is to be distributed according to the relative rights of the mortgagors and mortgagees. The mode in which the division is to be made is not specifically pointed out in the statute. Section 76 provides the mode in which mortgagors and mortgagees shall become parties to the proceedings. Section 77 is in these words: " When mortgagors or mortgagees commence or become parties to proceedings upon a petition for such damages, entire damages shall, upon final judgment, be assessed for the property taken, and such portion thereof ordered to be paid to every mortgagee, being a party, in the order of his mortgage, as is equal to the sum then unpaid thereon, and the balance to the mortgagor; and separate judgment shall be entered accordingly for each mortgagee, who shall hold his judgment in trust, first with any proceeds realized thereon to satisfy his mortgage debt, and, after such debt is in any way satisfied, to assign the judgment or pay over any balance of proceeds to the mortgagor or other person entitled thereto." By this section the entire damages are to be assessed in one sum, which sum is to be paid to the several mortgagees in the order of the several mortgages, and a separate judgment is to be entered for each mortgagee, who shall hold his judgment in trust for himself and the mortgagor, or other person in interest.

Whether the respective rights of mortgagor and mortgagee are to be determined in the mode usually adopted, by proceedings in equity, or how otherwise, we have no occasion to inquire; for the statute is cited, not with any view of giving construction to it; nor because it would, under any circumstances, affect the rights of these parties; but simply to show that the legislative branch of the government in acting upon the subject has recognized the accuracy of the principle in *Breed* v. *Eastern Railroad*, *ubi supra*, that as between mortgagor and mortgagee there is but one estate, the damages to which must be assessed in gross, and the judgment for the amount recovered must be held in trust, to be distributed according to the equitable rights of mortgagor and

mortgagee, which are to be determined between themselves, and in which question the party taking has no interest.

Since this case was argued, and while it has been under advisement, the case of *Wilson* v. *European & North American Railway*, 67 Maine, 358, in some respects in conflict with the views here expressed, has been published. A decision by a court which we respect so highly as we do the Supreme Judicial Court of the State of Maine has induced us to review the subject. Upon the best consideration we can give to it, that decision seems not to rest upon principles so satisfactory as those upon which our result is based. They seem to us less practical, less convenient, and less equitable, as well as less logical. We cannot regard the mortgagor and mortgagee as having either distinct estates in the mortgaged lands, or a joint estate; and we see great practical difficulty in either view. If joined, the inquiry of the jury would be, not what interest has the mortgagee in the land, but what sum of money does the mortgagor owe the mortgagee. Each owns the whole land: the mortgagor as to all the world except the mortgagee; the mortgagee as between himself and the mortgagor. In case of several successive mortgagees, if the last mortgagee should present a petition for the assessment of his damages, we apprehend there would be difficulty in making the mortgagor and an intervening mortgagee joint parties, or in any manner binding them by the assessment of damages. If the mortgage were one of indemnity against a liability not fixed, there would be difficulty in determining the measure of damages. If it were indemnity, for example, against a liability of the mortgagee for the mortgagor as bail, and the mortgagee has recovered his damages for the land taken, and the liability as bail is never fixed, it is not easy to see how the mortgagor's rights are protected. In a more common case, where, by reason of a complication of accounts and the relations between the parties, their respective rights could be settled only in equity, by a bill to redeem or a bill to foreclose the mortgage, we see greater difficulties. It is not a subject upon which, on any principles of equity, the parties can be required to interplead. Or, in the very common case of dispute between mortgagor and mortgagee, which can be settled at law without a resort to equity, but involving such a state of accounts as to be unfit to be tried by a jury, and

an auditor is appointed, who are to be the parties before the auditor? In case the master in chancery or auditor makes a ruling unsatisfactory to either of the petitioners, in which ruling the respondent has no interest, can the petitioner except to a ruling in favor of his co-petitioner, and require the respondent to go with him to the court of final resort, and perhaps to several rehearings, and be taxed in costs for such continued litigation between the co-petitioners, when there is really no difficulty in determining the value of the land? It is easy also to see that the measure of damages is not necessarily the same, between the respondent and the mortgagor, as between the respondent and the mortgagee. If a person own a parcel of land, he may mortgage the southerly half of it, which is parcel of the whole; the taker for public use takes the southerly half of the parcel which is mortgaged; as between the taker and the mortgagee, the measure of damages is the whole value of the land taken, inasmuch as the mortgagee has no remaining land to be benefited; as between the taker and the mortgagor, the measure of damages is the value of the land taken, less the benefits accruing to the remaining land by reason of the taking. These and various other practical difficulties are all obviated by treating the damages assessed as land, as in equity it may be.

Such a taking is a public taking; the proceeding for the assessment of damages is a public proceeding; the mortgagee has equal knowledge with the mortgagor of the taking. He may protect all his rights. He may by proper proceedings follow the money into the hands of the mortgagor; or he may prevent it from going into his hands. Of course the burden will be upon him, as it should be, to show to what extent he has a claim upon the funds; and that question would then be litigated between the parties in interest, and not at the cost of a third party who has no interest in it.

Nor can we accede to the justness of the criticism upon the case of *Breed* v. *Eastern Railroad*, as reported in 5 Gray, 470, note. The decision of *Breed* v. *Eastern Railroad* was so well known to the profession, that, although not reported, it was cited by counsel in *Ballard* v. *Ballard Vale Co.*, to which it was appended as a note, the then reporter deeming it of sufficient public interest to be reported. The learned judge, in his opinion in

*Wilson* v. *European & North American Railway*, uses this language, "that it does not appear in the report of the case whether the mortgagee appeared or not"; and again, "the mortgagor was the petitioner, no one setting up any superior or opposing claim." The fact is overlooked that it appears by the report that counsel appeared "for the respondents and the mortgagees." At the time of that decision large discretion was exercised by the reporter as to what cases should be reported. The reporter, afterwards Mr. Justice Metcalf, was a very able, accurate and acute common lawyer. He probably supposed that the principle enunciated in the decision was so in harmony with the law that it was unnecessary to report it. Certainly, from what we know of him, we should expect him to have reported it, if, in his judgment, the decision in any manner varied from established rules, or was even novel in its application.

We do not deem the fact of registration a controlling one in the consideration of this question. For the purposes for which it is designed, the record of deeds is undoubtedly of the highest importance. But when land is taken for public use, it is not the record title that is acquired, nor is it any person's title, but the land itself, irrespective of record or other ownership. If the record would afford justification for compensating the apparent absolute owner as against the true owner, we should be very slow to say that one, taking under such right, would be justified in paying the mortgagee, as against the mortgagor, the amount apparently due upon a mortgage of record. The record is notice of a mortgage, but it is certainly unsafe evidence of the amount of the debt due upon the mortgage ; and if the fact that the mortgage is upon record requires that the taker should deem the mortgagee an owner, all the difficulties of ascertaining the true interest of the mortgagee, which have been before suggested, would exist. Various cases are cited from the reports of this Commonwealth, in all of which the court declined to pass upon the question whether the mortgagee had an interest which would be the subject of a claim; though in several of them are distinct intimations that there may be modes in which the interest of the mortgagee may be protected. Whether he would be remediless in states where there is not sufficient equity jurisdiction to protect his rights, or whether the common law could be found to

have elasticity enough to provide a mode of remedy, or whether it is a proper subject for legislative provision, we have no occasion to inquire; for, in this Commonwealth, there is full equity jurisdiction, and, under that jurisdiction, land, which is, by force of law, converted into money, may, as between mortgagor and mortgagee, be still treated as subject to the mortgage lien, and applied to the discharge of the mortgage.

We are therefore of opinion that the mortgagee was improperly admitted as a party. *New trial ordered.*