MARY WORCESTER *vs.* CITY OF BOSTON & another.

Suffolk.   March 11, 1901. — May 22, 1901.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Tax,* Sale, Mortgagee's lien on surplus of proceeds.

St. 1888, c. 390, § 40, provides, that in case of a tax sale the collector may sell the whole or any part of the land and after satisfying the taxes and charges shall pay the balance " to the owner of the estate " upon demand. *Held,* that the word " owner " as used in this clause does not include a mortgagee not in possession, unless his interest as mortgagee has been taxed to him as real estate under Pub. Sts. c. 11, § 14. The mortgagee, however, has an equitable lien on the proceeds of the land, which he may enforce in equity against the grantee of the mortgagor or his assignee with notice.

A mortgage of land provided, that the mortgagor should pay all the taxes and assessments upon the premises and that in default thereof he should pay to the mortgagee all sums that the mortgagee should reasonably pay for such taxes, and that in case of a sale under the power contained in the mortgage the mortgagee should retain from the proceeds all sums secured by the deed. The mortgagor failed to pay a tax and the land was sold for taxes under St. 1888, c. 390. The mortgagee on learning of the sale redeemed the land from it under the provisions of the same statute. In a suit in equity by the mortgagee to recover the surplus of the proceeds from the tax sale, it was *held,* that, in enforcing his lien on such proceeds against the grantee of the mortgagor, the mortgagee was entitled to have the amount paid by him to redeem from the tax sale treated as part of the mortgage debt.

The provisions of St. 1888, c. 390, §§ 60–63, in regard to the payment by a mortgagee of a tax unpaid by the mortgagor, cannot operate to deprive a mortgagee of rights arising from the express terms of the mortgage.

BILL IN EQUITY by a mortgagee, who had redeemed a parcel of land in Boston from a sale for taxes, to recover from the city the proceeds received from the sale after deducting the amount of the tax due and expenses, and also against George H. Reed, holding under the mortgagor, filed April 27, 1900.

The case was heard on the bill and answers and evidence by *Lathrop,* J., who found the following facts:

1. On or about June 30, 1897, one Adolph Rissell, being then seised in fee of the parcel of land before mentioned, borrowed from the plaintiff the sum of $3,000, and gave the plaintiff his promissory note therefor, payable in three years after that date, and as security therefor mortgaged to the plaintiff the land in question. The mortgage was recorded on or about July 2, 1897.

2. On or about July 8, 1897, Rissell conveyed the premises in fee, subject to the mortgage, to one John Anderson, by deed duly recorded, and on or about January 6, 1898, Anderson, by deed duly recorded, conveyed the premises in fee, subject to the mortgage, to the George Woodman Company, a corporation organized under the laws of this Commonwealth.

3. On May 1, 1898, the George Woodman Company was seised in fee of the premises subject to the mortgage, and a tax was duly assessed to that corporation, as the owner thereof, for the year 1898, of $54.40, which tax thereupon became a lien on the premises.

4. On or about September 12, 1898, the George Woodman Company conveyed the premises, subject to the mortgage, to one Cyrus C. Mayberry, by deed duly recorded, and Mayberry

remained seised in fee thereof subject to the mortgage until the tax sale and the conveyance hereinafter mentioned.

5. On or about December 28, 1899, the tax assessed to the George Woodman Company as owner of the premises then remaining unpaid, one Nathaniel H. Taylor, being then the collector of taxes for the city of Boston, and having taken all steps required by law to authorize and enable him legally to sell the premises for non-payment of the tax, sold the same at public auction, pursuant to law, to one William W. Reed, the brother of the defendant George H. Reed, for the sum of $850, being $785.80 in excess of the amount of the tax and the interest thereon, and incidental costs and expenses; and pursuant to the sale Taylor, as such collector, by deed dated January 11, 1900, and duly recorded, conveyed the premises to William W. Reed, the purchaser.

6. The semi-annual instalments of interest on the mortgage to the plaintiff were promptly paid to her by the successive owners from time to time of the premises until the instalment due December 30, 1899, which was not, and never has been, paid or tendered to the plaintiff, or to any person entitled to receive it. The plaintiff had no notice that the tax assessed for the year 1898 on the George Woodman Company as owner of the premises was unpaid, or that the premises were about to be sold for the non-payment thereof, or of the sale on December 28, 1899, until on or about January 22, 1900, when she received a letter from William W. Reed, informing her that the property had been sold to him for $850, and that he held a tax title thereon.

7. On or about February 24, 1900, the plaintiff redeemed the premises from the tax sale by the payment of $869.45 to William W. Reed, and received a release thereof from him; and on or about March 21, 1900, the instalment of interest due December 30, 1899, then remaining unpaid, and the plaintiff not having received payment of the amount of the tax from any person owning, or claiming to own, the equity of redemption in the premises, after due notice by publication as required by law and by the terms of the mortgage, sold the premises, pursuant to the power of sale contained in the mortgage deed, to one James Richard Carter, who bought the premises in her behalf for the

sum of $3,100, a sum less than the amount of the principal and the interest due thereon, and by deed dated March 21, 1900, conveyed the premises, by agreement with Carter, to him for the use of the plaintiff, and the plaintiff is now seised in fee thereof; and the balance of the principal and interest due thereon remaining after applying the purchase money, and the costs of said foreclosure, and the amount paid by the plaintiff for the redemption of the premises as aforesaid, remain wholly unpaid.

8. On or about January 19, 1900, Cyrus C. Mayberry, by deed duly recorded, conveyed the premises to the defendant George H. Reed for $151.62, and by deed purported also to assign to the defendant Reed all right to receive from the defendant the city of Boston the surplus proceeds of the tax sale of the premises on December 28, 1899. The conveyance was made subject to encumbrances of record, and Mayberry and the defendant Reed knew that the premises were subject to the mortgage to the plaintiff, and that the plaintiff was ignorant that the premises had been sold for taxes.

9. No evidence of conspiracy, as charged in the bill, was introduced.

10. The defendant George H. Reed claimed the surplus of the tax sale in the hands of the city, under the St. 1888, c. 390, § 40. The plaintiff claimed the surplus under this and other sections of the same statute.

11. The city, in its answer, admitted that it had in its possession the surplus of the tax sale, amounting to $785.80, and was ready to pay it to the person or persons entitled thereto, and asked that, as it was a mere stakeholder, it might be allowed its costs.

The mortgage deed, a copy of which was annexed to the bill, provided that until the mortgage debt was paid the mortgagor, his heirs, executors, administrators or assigns, " shall pay all taxes and assessments, to whomsoever levied or assessed, whether on the granted premises or on any interest therein, or on the debt secured hereby, and whether in the nature of taxes and assessments now in being or not, . . . or in default thereof shall pay to the grantee, her heirs, executors, administrators or assigns, all such sums as she or they shall reasonably pay for

such taxes, assessments and insurance, with interest; . . . Said grantor hereby covenants and agrees for the consideration aforesaid to punctually pay said taxes and assessments, and not to make claim to any reimbursement whatever therefor, and the non-payment of such taxes and assessments when due shall be deemed a breach of this mortgage."

The power of sale clause contained the provision, that in case of a sale under the power the mortgagee shall " out of the proceeds of such sale retain all sums then secured by this deed (whether then or thereafter payable), with interest and all costs and expenses."

At the request of the parties, the justice reported the case for the consideration of the full court, such order or decree to be entered as to the court should seem meet.

*W. H. Dunbar*, for the plaintiff.

*A. E. Clary*, for the defendant George H. Reed, submitted the case on a brief.

HAMMOND, J.   The first question is, whether the plaintiff is the owner to whom, under St. 1888, c. 390, § 40, the city is directed to pay the balance of the proceeds of the sale, remaining after satisfying the taxes and charges.

The material part of this section reads thus: " If the taxes are not paid the collector . . . may . . . sell the whole . . . of the land; and after satisfying the taxes and charges, he shall deposit the balance, if any, in the treasury of the city or town ; and such city or town shall pay such balance to the owner of the estate upon demand."

Prior to the Revised Statutes, the collector could sell so much only of the land as should be sufficient to discharge the taxes and charges.   St. 1785, c. 70, §§ 6, 7.   Rev. Sts. c. 8, § 28.

But, upon the recommendation of the commissioners of the Revised Statutes, (see their note to c. 8,) the collector was authorized to sell the whole land, if in his opinion it could not be reasonably divided and a part set off without injury to the residue, and, after first satisfying the taxes and charges, he was to " pay over the residue of the proceeds of the sale to the owner of the estate, upon demand."   Rev. Sts. c. 8, § 29.

Although this section has since been amended in various ways, this direction to pay the surplus to the " owner of the

estate " on demand has been a constant feature. Gen. Sts. c. 12, § 33. Pub. Sts. c. 12, § 35. St. 1888, c. 390, § 40.

In order to find the true interpretation to be given to the word "owner" in this connection, it is well to look somewhat into the statutes respecting the assessment and collection of taxes which were in existence when the provision as to the payment of the surplus proceeds of the sale first appeared. Taxes on real estate were assessed to the owner or occupant, and, in the case of mortgaged real estate, the mortgagor was to be deemed the owner unless the mortgagee took possession, after which he was deemed the owner. Rev. Sts. c. 7, § 7.

The assessors were required (§ 29) to make a list for public inspection, showing the valuation and assessment, which list should contain among other things the names of the persons assessed, and the description and value of the real and personal estate assessed to each; and also (§ 31) to commit a similar list with their warrant to the collector.

The collector, with this list and warrant before him, proceeded to collect the taxes named in the list " according to the warrant." Rev. Sts. c. 8, § 1. He could distrain the goods of, or arrest, the persons named in the warrant. §§ 7, 11. Taxes assessed on real estate constituted a lien thereon, and he could collect by sale thereof " after a demand of payment made either upon the person taxed, or upon any person occupying the estate." § 18. This remedy was in addition to the remedy by distress and arrest as against the person taxed.

Before selling, he was required to give notice of the time and place of sale by an advertisement which should also state " the names of all the owners, if known to the collector, with the amount of the taxes assessed on their lands respectively." §§ 24, 25.

Section 32 provides that the " owner . . . or his heirs or assigns," may redeem from the sale at any time within two years thereof.

Upon a consideration of these various provisions it is seen, that the persons against whom the collector was to proceed were those named in the list committed to him by the assessors. They were the persons upon whom he was to make his demand, whose goods he might distrain, and whom he might arrest.

His personal remedies for the collection of the tax could be enforced only against the persons named in the list. But in the proceedings to enforce the lien upon the land, he was not so strictly confined to such persons. The demand for the payment of the tax need not be made upon the person taxed, but it was sufficient if it was made upon any person occupying the land. The collector was required also to state in his notice of sale the names of all the owners known to him. This was an important part of his duty, since it might be that the person named in the tax list was not the owner at the time of the assessment, nor even taxed as such, but simply as the occupant.

The proceedings are to enforce a lien. It is manifest that, as a general rule, the only persons interested in them are the persons having an interest in the land at the time of sale, and that, following the usual rule in such cases, they would be the persons entitled to the surplus. To hold otherwise, and to say that the surplus should be paid to the owner at the time of the assessment, although he had parted with his title, so that at the time of the sale he was not the owner of the land, would be likely to work great injustice in many cases, and would be inconsistent with the general principles applicable to the enforcement of liens and the distribution of surplus proceeds in case of sale.

In the various changes which have since been made in the tax laws, there does not appear anything which changes the meaning of the word " owner " as used in this connection, and it must therefore be held that the word designates the owner at the time of the sale.

It is contended, however, by the plaintiff that the term " owner " should be held broad enough to include mortgagees; and that, in every case where there are such parties, it is the duty of the city or town to pay the money over to the persons interested, in the order of the priority of their interests in the land; in a word, that the money stands for the land, and that those who have any interest legal or equitable in the land have a like interest in the money.

But it is to be noted that, at the time this provision for the payment of the surplus was first inserted, it was to be paid by the collector himself, and the word " owner " had been pretty

clearly defined in the tax statutes, especially as between mortgagor and mortgagee. In Rev. Sts. c. 7, § 7, it was provided that taxes on real estate were to be assessed to the owner or occupant, and in the case of mortgaged real estate " the mortgagor shall, for the purposes of taxation, be deemed the owner until the mortgagee shall take possession, after which the mortgagee shall be deemed the owner." It would be difficult to lay down the rule in clearer terms, so far as respects the assessment.

The tax, whether assessed to the owner of the fee or to the mortgagee in possession as the owner, was a tax upon the whole land; and the general rule was that the tax, whether assessed to the owner whose name might be known or unknown, or to a life tenant or an occupant, was a tax upon the whole land and not merely on the interest of the person taxed. The tax is upon the parcel of real estate as one entire interest. *Parker* v. *Baxter*, 2 Gray, 185, 189.

Titles to real estate are frequently very complicated. There may be life estates absolute or defeasible, vested or contingent, leasehold interests, mortgagees and lienors of various kinds, and the claims secured by the mortgages or liens may be secured by other estate either real or personal, so that it would be necessary in order to see how much of the claim should be a charge upon the surplus proceeds of the real estate sold to marshal the assets and to apply the complicated rules of law upon that subject. And it is to be remembered that, in many cases the collector is not learned in the law, that in all cases his duties are those of an executive officer, and that he has no way of determining the amount, if in dispute, of the sum due even in the case of a simple mortgage.

To hold under these conditions that the word " owner," as used in the first statute on this subject, was broad enough to include all the persons having an interest in the land as mortgagees or lienors at the time of the sale, and that it was the duty of the collector to distribute the surplus proceeds among such persons according to the value and priority of those interests, is to hold that there was imposed upon him the duty to investigate and decide complicated questions of title without giving him the power by which alone he could properly perform that duty. Nor is such a view of the statute consistent with

the simplicity desirable in the rules for the collection of taxes, and it would be impracticable in many cases. See *Farnsworth v. Boston*, 126 Mass. 1, 6. It is clear that the word "owner," as used in that first statute, meant simply the legal owner, or a mortgagee in possession.

Since the Revised Statutes there have been numerous changes in, and additions to, the tax laws, but none of them calls for any particular notice here, except possibly Pub. Sts. c. 11, §§ 14, 15 and 16. These sections provide in substance that, when a person has an interest in real estate as the holder of a duly recorded mortgage given to secure the payment of money the amount of which is fixed and certain, the amount of his interest shall be assessed to him as real estate, and the mortgagor shall be assessed only for the value of the real estate after deducting the assessed value of all the interests of such mortgagees. The amount of the interests of such mortgagees is to be determined by the assessors under certain rules. For the purposes of taxation, such mortgagors and mortgagees shall be deemed joint owners until possession is taken by the mortgagee. These provisions first appear in St. 1881, c. 304; and the act was passed, as is well known, for the purpose of abolishing what it was contended by some was a certain kind of double taxation. In 1882, however, it was provided that such mortgagor or mortgagee might bring in to the assessors a sworn statement respecting his interest in the real estate, and that if none was brought in the tax should not be "invalidated for the reason that a mortgagee's interest therein has not been assessed to him." St. 1882, c. 175. Since this last statute, the provisions of Pub. Sts. c. 11, §§ 14, 15, 16, are rarely regarded, and the result intended by them has been practically reached by a failure on the part of the assessors to assess to the mortgagee either as real or personal property the sum represented by the mortgage.

We are of opinion that, where the interest of such a mortgagee is assessed to him as real estate, he, by virtue of Pub. Sts. c. 11, § 16, must be regarded as one of the joint owners of the land, to whom the city or town is directed to pay the surplus, but that — at least since St. 1882, c. 175 — where such a mortgagee does not bring in the statement required and his interest is not assessed to him as real estate, he is not such owner. The

owner is either the legal owner at the time of the sale, or a mortgagee whose interest in the real estate is of the kind described in Pub. Sts. c. 11, § 14, and has been assessed to him as real estate. It follows that the plaintiff was not an owner to whom the city is directed to pay the surplus.

But, while, as between the city and the owner at the time of the sale, the surplus belonged to the owner, it does not necessarily follow that, as between the owner and the mortgagee, the former's title to the proceeds will prevail. The mortgagee has an interest in the land which is superior to that of the mortgagor.

The general rule is that, when land is turned into money, especially by some act of the public authorities, the lien of the mortgagee extends to the money, and it may be enforced by equitable process. This principle has been fully recognized by this court. *Farnsworth* v. *Boston*, 126 Mass. 1. *Union Institution for Savings* v. *Boston*, 129 Mass. 82. *Wood* v. *Westborough*, 140 Mass. 403. Indeed, it is only one application of a general principle by which in equity one who has a lien upon property may follow the proceeds and enforce his lien thereon if there is no remedy at law. See *Wiggin* v. *Heywood*, 118 Mass. 514.

We are of the opinion that the principle is applicable to this case. The tax title was superior to the title of the plaintiff. The land was sold and changed to money. The plaintiff's title to the land was superior to Mayberry's title at the time of the sale, and hence her title to the proceeds is superior to his. Her lien upon the land became an equitable lien on the proceeds, and, there being no remedy in law, she is entitled to enforce it by equitable process.

Nor does the defendant Reed stand in any better condition than Mayberry. He purchased the latter's interest in the proceeds with full knowledge of the rights of the plaintiff. The price paid by him indicates also that he had full notice of the infirmity of his title.

There is no doubt that the amount paid to redeem the property from a tax sale should be added to and made a part of the debt secured by the mortgage, so far as respects the lien upon the land. The mortgage deed was upon the condition that the mortgagor, his heirs, executors or assigns, should pay all the

taxes and assessments upon the premises, and that, in default thereof, he should pay to the mortgagee all such sums as she should reasonably pay for such taxes. And further, that in case of sale under the power, the mortgagee should retain from the proceeds all sums secured by the deed.

Under these provisions of the mortgage deed, the mortgagee is clearly entitled to have the amount, paid to redeem from a tax sale, made a part of the mortgage debt. The sum so paid is the direct result of the breach of the condition of the mortgage. It was a sum which the mortgagee was obliged to pay in order to preserve her security unimpaired. *Skilton* v. *Roberts*, 129 Mass. 306, 309. *Windett* v. *Union Ins. Co.* 144 U. S. 581. Jones, Mortgages, §§ 77, 358, and cases there cited.

The defendant Reed contends that the right of the mortgagee to add to the principal of the mortgage debt sums paid for taxes is founded upon and regulated by statute, and that as the mortgagee has not pursued the course pointed out by St. 1888, c. 390, especially in §§ 60–63, he cannot now insist upon the right. We regard those provisions of the statute simply as pointing out a plain way which the mortgagee can pursue if he desires. Certainly they cannot be held to exclude a right arising, as in this case, out of the express terms of the mortgage deed.

Since the surplus is less than the sum secured by the mortgage and remaining unpaid, the plaintiff is entitled to a decree for the whole.

*So ordered.*