WILLIAM H. SULLIVAN *vs.* CITY OF BOSTON

Suffolk.    November 22, 1907. — March 2, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Tax*, Assessment. *Mortgage*, Of real estate. *Joint Tenants and Tenants in Common.*

A statement to the assessors of a city under R. L. c. 12, § 45, attempted to be made by a mortgagee of real estate, in order that the assessors may ascertain the proportionate interests of the mortgagor and mortgagee in the property described and assess the interest of the mortgagee separately under §§ 16, 17 of the same chapter, does not comply with the statute, if the statement relates to

two separate lots of land held under one mortgage by the person making the statement and the only description of the land is that it is located on "Norton and Olney Streets" in Dorchester, whereas only one of the lots covered by the mortgage abuts on both of the streets named and the other lot abuts on only one of them, especially where the statement also is fatally defective in containing neither a statement "of the amount secured . . . on each separate parcel" nor an "estimate of the interest of the mortgagee . . . in each part," and an assessment upon the lot not covered by the description, made wholly to the mortgagor after the receipt of such a statement by the assessors, is valid.

Land owned in common may be assessed for taxation to the tenants in common together, and need not be assessed to each of them separately upon his undivided share.

Where land has been laid out by the owners in lots according to a plan recorded in the registry of deeds, and some of the lots have been sold, it may be assessed for taxation in lots although it is unoccupied, especially if the owners do not object to this method of assessment.

Although, where no statement by a mortgagor or mortgagee of real estate is presented to the assessors of a city or town in compliance with the terms of R. L. c. 12, § 45, for the purpose of obtaining a separate assessment of the respective interests of the mortgagor and the mortgagee, it is not customary for the assessors to make such separate assessments, yet under § 16 of the same chapter they may make such separate assessments, if they please, either where there has been no statement or where there has been an imperfect one.

Where the holder of a mortgage for an entire amount upon two parcels of real estate attempts to make a statement to the assessors under R. L. c. 12, § 45, for the purpose of obtaining a separate assessment of his interest as mortgagee, but his statement contains a description intended to cover both parcels which applies only to one of the lots and also fails otherwise to comply with the terms of the statute, and the assessors assess the mortgagee's interest in the only lot described in the statement at the amount of the whole mortgage as given in the statement, the assessment is valid, and if the mortgagee deems it excessive in amount his only remedy is by abatement.

HAMMOND, J. This is an action of contract to recover back money paid under protest for taxes alleged to have been illegally assessed upon land which was owned by the plaintiff, not at the time the taxes were assessed, but at the time they were paid. The trial judge sitting without a jury found for the plaintiff, and the case is here on exceptions taken by the defendant.

The taxes were assessed as of May 1, 1903. At that time the land consisted of two parcels, one upon the easterly side of Norton Street, and one upon the westerly side. They were owned by Patrick and Michael H. Norton, in fee, subject to two mortgages, the first for $25,000, held by the Boston Insurance Company, hereinafter called the insurance company, and the second for $8,000, held by one McQuesten, each mortgage covering both parcels. The McQuesten mortgage may be elim-

inated from the case as being immaterial to the questions before us.

· 1. As to the tax on the lot upon the easterly side of Norton Street. The first ground upon which the validity of this tax is attacked is that it was assessed wholly to the Nortons and not in part to them and in part to the mortgagee. Upon this it appears that before the assessment of the tax the insurance company undertook to give the statement prescribed by R. L. c. 12, § 45, in order that its interest as mortgagee might be taxed under the provisions of §§ 16 and 17 of that chapter. But the difficulty with this contention is that the statement did not contain the particulars required by § 45. This section, so far as material to this case, reads as follows: " A mortgagor or mortgagee of real estate may bring in to the assessors . . . a statement under oath of the amount secured thereon or on each separate parcel thereof, with the name and residence of every holder of an interest therein as mortgagor or mortgagee. If such property is situated in two or more places, or if a recorded mortgage includes two or more estates or parts of an estate as security for one sum, such statement shall include an estimate of the interest of the mortgagee in each estate or part of an estate. The assessors shall, from such statement or otherwise, ascertain the proportionate interests of the mortgagor or mortgagee respectively in said estates, and shall assess the same accordingly. If, in any year, such statement is not brought in, the tax for that year on such real estate shall not be invalid merely for the reason that the interest of the mortgagee therein has not been assessed to him."

The clear meaning of this section, especially when taken in connection with the history of the legislation on this matter, is that when two or more parcels situated in the same town are included in a mortgage as security for one entire sum, the statement must include, for the guidance of the assessors, an apportionment of the amount secured upon each parcel. Stated in another way, the statement must show to the assessors the estimate which the maker thereof, whether he be the mortgagor or mortgagee, himself places upon the taxable interest the mortgagee has in the lot to be assessed. That estimate the assessors are entitled to. This feature of this method of taxation is very important, and it was enacted for the purpose of

relieving the assessors from the duty, onerous and practically impossible of performance, which St. 1881, c. 304, had imposed upon them. See *Worcester* v. *Boston*, 179 Mass. 41, for a general summary of the legislation. The apportionment which under this section it is the duty of the assessors to make is not apportioning the entire sum due on the mortgage among the several parcels covered by it, but that of determining " the proportionate interest of the mortgagor or mortgagee respectively." Upon an inspection of the statement of the insurance company, which was the only statement sent to the assessors, it appears to be lacking in this respect. The statement relates to several pieces of land held by the company on mortgages, but as to this land the only description is that it is located on " Norton and Olney Streets " in Dorchester ; and the amount of the mortgage is stated to be \$25,000.\* The fair construction of this is that the land abuts both on Norton and Olney Streets, and that it does not apply to land which does not touch both of those streets. The lot upon the easterly side of Norton Street did not abut on Olney Street, nor was it within several hundred feet of that street. The statement therefore, fairly construed, did not refer to this lot at all. Especially is this so when it is remembered that the other lot, namely, the one upon the westerly side of Norton Street does abut on Olney Street and that the language aptly enough describes that lot. But, even if it be said that inasmuch as both streets are named the language may fairly be construed as including any land owned by the Nortons on either street, whether it touches the other or not, still the statement is fatally defective on another account. It contains neither a statement " of the amount secured . . . on each separate parcel " nor an " estimate of the interest of the mortgagee . . . in each part."

---

\* The statement made by the Boston Insurance Company included a long list of mortgages. The list was preceded by an introductory clause declaring an intention to make the statement in conformity with the requirements of St. 1882, c. 175. The portion of the statement relating to the property here in question occurred in the list under the following heads as follows:

| " Location. | Mortgagor and Present Owner of Equity. | Residence. | Amount." |
|---|---|---|---|
| . . . . . | . . . . . | . . . . | . . . |
| " Norton & Olney Sts. | { Patrick Norton Michael H. Norton } | Dorchester | \$25.000 " |

Hence by the express terms of the statute the tax assessed to the Nortons " was not invalid merely by reason that the interest of the mortgagee had not been assessed."

The next objection to the validity of the tax is that it was assessed to the Nortons jointly, whereas, as the plaintiff contends, it should have been assessed one undivided half to each. This objection is untenable. Land owned in common may be assessed, so far as respects the lien thereon, to the tenants in common, and such is the general practice.

Another objection urged is that the land was assessed in lots, whereas the plaintiff says it should have been assessed as a whole. But it appears that although it was vacant land yet a plan of it showing that the owners had divided it into lots had been made and recorded by the Nortons, and some of the lots had been sold. Under these circumstances, especially in the absence of any objection of the Nortons to the contrary, we are of opinion that the tax was properly assessed upon the lots.

It follows that as to this first parcel the tax does not appear to have been invalid.

2. As to the second lot. If, as seems to be contended by the plaintiff, no part of this lot was assessed to the insurance company but all was assessed to the Nortons, then for the same reasons which are given as to the first lot, the tax upon this lot is not shown to have been invalid. As to the manner in which the assessment was made, the evidence was somewhat conflicting, and the judge may have disbelieved the evidence of the secretary of the board of assessors that a tax was assessed to the insurance company upon its interest in this lot at a valuation of $25,000, and one to the Nortons upon their interest at a valuation of $4,100, and may have found that the whole estate was taxed to the Nortons. If he did, then, as already said, the tax was valid.

But it does not appear what view he took of the evidence. There were three books in evidence, the street book, the tax book and the real estate book. The tax book, so called, which is the one containing the assessment as finally made by the board and a copy of which is sent with the warrant to the collector, is the real record of the official assessments by the board. The street book contains only preliminary entries, while the real

estate book plays no part whatever in the assessments. Now on the tax book there were indications that a tax was laid upon the insurance company's interest, valued at $25,000, in this lot; and one Folsom, the secretary of the board, testified that relying upon the information given in the above mentioned statements of the insurance company, the board assessed the company "as mortgagee in the sum of $25,000 on the one parcel of land that is shown upon said plan that bounds on both Olney and Norton streets and that was assessed for a sum in excess of $25,000." Dixon, in whose handwriting the bill paid by the plaintiff was made out, on the face of which the assessment seems to have been made upon the whole value of the lot to the Nortons, testified that "he did not know how it happened that the tax bills were made out in this form as the only record of the assessment which was kept in the collector's office was the tax list, and that upon an inspection of the tax list which was before him when he testified, he found that the assessment was made in the manner testified to by the secretary of the board." Upon the whole evidence we think it probable that the judge found that the tax was assessed as stated by the secretary, and as indicated upon the tax book in the office of the assessors, a copy of which is the tax list committed to the collector.

Even if this was so, the tax was not thereby made invalid. R. L. c. 12, § 16, requires as a general rule that the interest of a mortgagee in real estate shall be taxed to him as real estate, and that "the mortgagor shall be assessed only for the value of such real estate after deducting the assessed value of the interest therein of such mortgagee." But in view of the evident perplexity in which the assessors would be placed if this question of the relative value of the two interests should be left to be determined by them unaided by any statement of the interested parties, § 45 provides that unless the statement therein prescribed is made to the assessors the tax shall not be invalid simply for the reason that the mortgagee's interest is not taxed to him. The practical result doubtless is that assessors generally take the line of least resistance and pay no attention to the provisions of § 16 unless the statement required by § 45 has reached them. They assess the whole estate to the mortgagor. Nevertheless, under § 16, it is always in the power of the assessors to tax the mortgagee's

interest, even if the statement required by § 45 be not handed in to them. Hence, if it appeared from the information given to them that there was a mortgagee's interest to be taxed, they could tax it. There was a mortgagee's interest in this land. They understood that they were to tax it to the mortgagee. They understood further from the statement of the insurance company that the mortgage covered this lot only. Acting under such information as they had, they valued the mortgagee's interest in this lot at $25,000, and assessed it accordingly. This they had the right to do. They made the division between the mortgagor and mortgagee required by § 16, and, if the interest of either was overvalued, the only remedy for the party aggrieved was in proceedings upon petition for abatement. To sum up in a sentence upon this branch of the case, the statement handed in by the mortgagee was not such as the law required. Still, although it was informal, the assessors having seen it could proceed upon such hints as it contained, and under § 16 assess the mortgagee's interest at such valuation as seemed to them just and reasonable.

It follows that whether the tax was assessed wholly to the Nortons or whether it was assessed in part to them and in part to the mortgagee, it was not thereby made invalid.

Nor, for reasons stated in considering the tax upon the first lot, was the tax rendered invalid because the interest of the Nortons was taxed to them jointly.

While it is true that the tax bill upon this lot which was handed to the plaintiff showed upon its face that the tax was assessed wholly to the Nortons, yet we understand that it was the purpose of the plaintiff to pay whatever tax there was upon this lot; and there can be no doubt that, after the payment of the bill, the collector could not properly have proceeded to enforce the tax upon the mortgagee's interest. Whatever the form of the bill, it was the understanding both of the plaintiff and the collector that that tax was included among those paid and such was the legal result. See *Hurd* v. *Melrose*, 191 Mass. 576.

If there was any overvaluation, the only remedy of the parties assessed was, as we have said, by abatement; and the plaintiff, whose title was acquired in August, 1905, can stand in no better condition. This is not a case where land is assessed to a per-

son which is not owned by him, to whom no assessment of it could properly be made. In such a case, while the remedy of the person assessed is by abatement only if he be assessable for any land whatever within the jurisdiction of the assessors, still there is no lien upon the land, and the landowner can hold his land as against any attempted sale for non-payment of the tax. In the case at bar the persons assessed were at the time of the assessments the owners of the respective estates. The distinction is clearly stated in *McGee* v. *Salem*, 149 Mass. 238. See also *Jennings* v. *Collins*, 99 Mass. 29, 32 ; *Lancy* v. *Boston*, 186 Mass. 128, 132.

It follows that the first, second and sixth requests of the defendant should have been given.*

*Exceptions sustained.*

*G. A. Flynn*, for the defendant.
*H. H. Buck*, for the plaintiff.

---

* The rulings referred to requested by the defendant and refused by the judge were as follows:

1. The Boston Insurance Company and Patrick and Michael H. Norton, being legally taxable on real estate other than the property in question, the plaintiff's only remedy is by petition for abatement.

2. The property upon which the interest of the Boston Insurance Company as mortgagee was assessed was liable to taxation, and if it was assessed for the wrong amount or for an improper proportion of the mortgage the plaintiff's only remedy is by petition for abatement.

6. The defendant on all the evidence is entitled to a verdict.