WILLIAM L. WOOD & others *vs.* INHABITANTS OF WEST-
BOROUGH & others.

Worcester.   Oct. 1, 1885. — Jan. 5, 1886.   FIELD & C. ALLEN, JJ.,
absent.

The St. of 1881, *c.* 110, (Pub. Sts. *c.* 49, § 110,) allowing mortgagors and mort-
gagees, when mortgaged land is taken for public uses, to join in a petition for
damages, is remedial in its character, and applies to proceedings begun after it
took effect, although the land was previously taken.

A brook was taken by a town for a public use, and mortgaged land was thereby
injured. After the St. of 1881, *c.* 110, took effect, the mortgagor filed a petition
for the assessment of damages for the taking, in which he did not state that the
land was mortgaged, and no order of notice was issued to the mortgagee. *Held,*
that, after the mortgagor had obtained a verdict, the mortgagee could maintain a
bill in equity against the town and the mortgagor to have the amount recovered
applied in payment of the mortgage debt.

In 1878, a brook was taken by a town for a public use, whereby mortgaged land
was injured. An action was brought against the mortgagor, and the town was
summoned as trustee. In 1880, the mortgagee died, and his administrator held
the mortgage, on account of this suit, without foreclosing it, until 1882, when
he assigned it to the distributees of the estate. In 1881, the mortgagor filed a
petition to have his damages sustained by the taking assessed; and in January,
1884, he obtained a verdict. One of the distributees knew of the taking of the
brook, and was informed of the petition of the mortgagor when it was on trial;
but it did not appear that the distributees then knew that they were entitled to
damages. In February, 1884, the distributees, as assignees of the mortgage,
brought a bill in equity against the town and the mortgagor to have the damages
awarded applied to the payment of the mortgage debt. *Held,* that these facts
would warrant a finding that the plaintiffs had not been guilty of laches.

BILL IN EQUITY, filed February 7, 1884, by William L. Wood,
Sarah A. Collins, and Viola R. A. Belknap, against the town of
Westborough, Charles Aldrich, and Abner Prentiss, and alleging
the following facts:

On April 6, 1877, the defendant Aldrich executed a mortgage
of a parcel of land in Southborough to W. B. Wood, to secure a
promissory note for $3140, to be paid in semiannual payments
of $100 each, the first payment to be made in six months from
said April 6.

The plaintiffs are now, and have been since September 28,
1882, the holders and owners of said mortgage and the note se-
cured thereby, upon which note there is now due about the sum
of $2500.

The town of Westborough, being duly authorized by the St. of 1873, c. 77, has, since the date of said mortgage, diverted from Sudbury River, and from the mortgaged premises, the waters of Picadilly Brook, so called, a tributary of said river, by means of a dam across said brook, whereby the mortgaged premises are greatly injured and damaged, and the value thereof greatly impaired.

Aldrich, about March 5, 1883, brought in the Superior Court his petition against Westborough for the assessment of the damages caused to the mortgaged premises by the diversion from said river of said brook, and, at December term, 1883, a verdict was duly obtained by him, upon his petition, for the sum of $621.28; but no judgment has been entered up thereon.

The plaintiffs are informed that one Abner Prentiss of Westborough has brought a suit against Aldrich, returnable at the next March term of this court, and has summoned Westborough as the trustee of said Aldrich therein.

The plaintiffs contend that they, as owners of the mortgage, are entitled to receive said sum of $621.28 from the town, to be applied upon their mortgage.

The prayer of the bill was, that the town of Westborough might be restrained from paying over said sum of $621.28 to any person or persons except the plaintiffs, and that it be decreed to pay the same over to the plaintiffs; that Aldrich be restrained from collecting said sum from the town, or from assigning his rights under the verdict; and that Prentiss be restrained from collecting said sum of the town in the trustee process.

The case was heard in the Superior Court, before *Barker*, J., who ordered a decree to be entered dismissing the bill. The defendant appealed; and in pursuance of the St. of 1883, c. 223, § 7, the judge reported the facts found by him, in substance as follows:

The plaintiffs are joint assignees and holders of the mortgage mentioned in the bill of complaint.

This mortgage was given on April 6, 1877, by the defendant Aldrich, upon his purchase of the mortgaged estate from W. B. Wood, now deceased, who was the father of two of the plaintiffs; and Aldrich has ever since his purchase continued to be the owner of the mortgaged premises subject to the mortgage, and in possession of the same as mortgagor.

From April 6, 1877, to his death, on January 14, 1880, W. B. Wood held and owned the mortgage. On February 3, 1880, one Dexter Newton was duly appointed administrator of the estate of W. B. Wood, and received the mortgage, as such administrator, as part of the assets of the estate of said deceased, and continued to hold the mortgage until September 28, 1882, when he assigned the same to the plaintiffs, who were all the distributees of the estate of his intestate.

From September 28, 1882, until the hearing, the plaintiffs have held and owned the mortgage under the assignment to them.

Neither W. B. Wood, Dexter Newton, nor the plaintiffs, have ever entered upon the mortgaged premises, either for the purpose of foreclosure or otherwise.

During the lifetime of W. B. Wood a suit was begun by the defendant Prentiss against the defendant Aldrich, to recover damages claimed by Prentiss to have been done to his mill, situated above the mortgaged premises on the same stream, by means of a dam on the mortgaged premises, and this suit was prosecuted during the time when Newton was' serving as such administrator as aforesaid; and he refrained from foreclosing the mortgage while he held the same, at the request of the plaintiffs, who did not wish him to take possession under the mortgage, on account of the pendency of that suit.

The town of Westborough was authorized to take the waters of Picadilly Brook, a tributary of the Sudbury River and a source of the water power of the mill on the mortgaged premises, by the St. of 1873, *c.* 77, which took effect on March 15, 1873.

Under this act, the town took the waters of Picadilly Brook on September 23, 1878, and filed a description of the taking in the registry of deeds at Worcester on November 22, 1878.

Neither W. B. Wood, in his lifetime, nor Dexter Newton, as administrator of his estate, nor the plaintiffs, have filed or made any claim for damages to the mortgaged premises by said taking, except that the plaintiffs have brought this bill under the circumstances herein found.

William B. Wood was a resident of Westborough until his death. Dexter Newton was a resident of Southborough, knew the mill privilege on the mortgaged premises, and that it was supplied in part by the waters of Picadilly Brook, and knew of the

pendency of the Prentiss suit, and, at the time thereof, of the taking of the brook by the town of Westborough. He never claimed to be entitled, as administrator holding said mortgage, to the damages done to the mortgaged estate by said taking, and he settled his final account as administrator in the Probate Court on January 2, 1883.

The plaintiff William L. Wood was and is a resident of Westborough, and knew of the taking of the brook by the town at the time it was done. The plaintiff Sarah A. Collins was and is a resident of Southborough, and on friendly and intimate terms with William L. Wood, who is her brother. Viola R. A. Belknap is a niece of the other plaintiffs, and a resident of Ashland, in the county of Middlesex. It did not appear that she had any knowledge of the taking of the brook by the town, or of the proceedings brought to recover damages to the mortgaged premises, until after the verdict against the town, when she joined in bringing the present bill, although her husband and agent knew that some brook had been taken by the town, but did not know what brook had been taken.

On September 12, 1881, Charles Aldrich filed with the county commissioners of Worcester county his petition for damages to the mortgaged estate by the taking aforesaid. Six or seven similar petitions for damages to other estates by the same taking were filed about the same time, and were prosecuted together. The causes were brought from before the county commissioners into the Superior Court at March term, 1883, and were tried before a jury at December term, 1883, and upon the petition of Aldrich a verdict was rendered in his favor on January 3, 1884, for $621.28, for damages to the mortgaged estate by said taking.

The proceedings of said Aldrich to recover said damages were brought and prosecuted by Andrew J. Bartholomew, Esq., as his attorney and counsel, said Bartholomew also representing and acting with other gentlemen of the bar for the other petitioners prosecuting similar claims against Westborough for the same taking. During the trial of the petitions in this court, the jury went to view the premises. At this time Bartholomew sent one of his associates, one Beeman, a lawyer residing in Westborough, but who was not attorney of record for any of the petitioners, to the plaintiff William L. Wood, whom he found in the

city of Worcester, and whom he told that the cases were on trial in this court, and that, as they (William L. Wood and the other plaintiffs) had a mortgage on the premises, he (Beeman) came to see if Wood did not wish to appear in court and protect his interest; and Wood replied to him, using the plural pronoun, "We do not want to have anything to do with the property," and said that he considered the property good enough for the mortgage. He also told Beeman the amount of the mortgage, and said that he did not wish to have anything to do with the estate, unless it should be necessary to benefit the value of other property in the vicinity; and in reply to Beeman's final question, "Then you do not want to have anything to do with the suits?" answered, "No." In this conversation Beeman did not state whom he represented, but Wood testified that Beeman came to him to come into the cases, and asked him to come and help fight, and that he told Beeman that he did not want to have much to do with it.

While the trials were going on, one Elliot Claflin asked Wood if he went up to attend to the suits, and he said, "No; I have had all the law I want, and do not have anything to do with them."

After the verdict, a townsman told Wood that the mortgagees could get pay, and Wood then told the other plaintiffs about it, and did not tell them before, and he did not himself understand, when he had the conversation with Beeman, that the mortgagees had any legal claim to the damages sought to be recovered.

After the rendition of the verdict in favor of Aldrich, the plaintiffs consulted counsel, and, on February 7, 1884, filed their bill of complaint in this action.

The St. of 1881, *c.* 110,* took effect on April 18, 1881, while Dexter Newton, as administrator of the estate of W. B. Wood,

---

* This statute is as follows: "Whenever mortgaged lands are taken for public uses under authority of law, both mortgagors and mortgagees, in addition to their rights under the mortgage, shall have the same powers, rights, and privileges, and be subject to the same liabilities and duties, now provided by law in the case of mortgaged lands so taken by railroad corporations."

The statute here referred to is the St. of 1874, *c.* 372, § 76, which provides that "all petitions for the estimation of such damages shall state all

held and owned the said mortgage, and before Aldrich brought his said petition for damages, which also occurred during the time when Newton, as such administrator, held such mortgage. Aldrich, when making his petition for damages, knew that said mortgage existed on the premises, but did not state said mortgage in his said petition, and no order of notice to the parties interested in said mortgage, requiring them to appear at the hearing on said petition and become parties to the proceedings, has been issued or applied for upon his petition, and no application has been made by the plaintiffs for leave to become parties to the proceedings upon the petition.

The defendant Prentiss has brought a suit against the defendant Aldrich, and summoned the town of Westborough as trustee of Aldrich therein, as alleged in the bill.

Upon these facts the judge found, and ruled, that there had been no such laches on the part of the plaintiffs, or of the preceding holders of said mortgage, as ought to bar the plaintiffs from seeking equitable relief in the premises, and also that there had been no actual or intentional waiver on their part, or of those under whom they took and hold said mortgage, of the right to claim to have said damages applied in part payment of said mortgage, and ruled that he was not required in law to find any waiver from the facts above stated. The judge further ruled, that the St. of 1881, c. 110, was remedial, and applicable to any petition for the ascertainment of damages claimed for the taking of Picadilly Brook by the town of Westborough, instituted after April 18, 1881; and that under said statute the plaintiffs had a plain, adequate, and complete remedy at law, and had no right in equity to the relief sought in their bill in this cause.

*W. S. B. Hopkins*, for the plaintiffs.

*F. P. Goulding*, (*C. R. Johnson* with him,) for the defendant Prentiss.

---

mortgages known by the party petitioning to exist upon the premises to be adjudicated upon. Mortgagors and mortgagees may join in any such petition, and the tribunal to which it is presented shall order the petitioner to give notice thereof to all parties interested as mortgagors or mortgagees, by serving each of them, fourteen days at least before the time of hearing, with an attested copy thereof, and the order thereon, that they may appear at said hearing and become parties to the proceedings."

DEVENS, J. As the St. of 1881, *c.* 110, (Pub. Sts. *c.* 49, § 110,) was remedial in its character, and was not intended to change any rights of parties, who, as mortgagors or mortgagees, had interests in land which had been taken for public purposes, but only to provide a more convenient mode of adjudicating and adjusting them, it would be applicable to proceedings begun after its passage, even if the land to which they related had been previously taken. One remedy may be taken away and another substituted therefor, although such legislation operates incidentally on existing rights. *Simmons* v. *Hanover*, 23 Pick. 188. *Upham* v. *Raymond*, 132 Mass. 186. Nothing was added to the burden of the party who had taken the land, and nothing was taken away from the rights of the landowner, but the statute simply provided for the distribution of the damages in accordance with the equitable interests of those interested.

Before the enactment of this statute, the only remedy which a mortgagee not in possession had, when any portion of the land was taken for public purposes, was in equity against the mortgagor. The latter was recognized as the owner; he alone could maintain a petition for damages; and it was only by a proceeding against him, the taker of the land being made a party thereto when deemed necessary, that the mortgagee was able to have such damages as might be recovered devoted to the payment of the mortgage debt. *Farnsworth* v. *Boston*, 126 Mass. 1. *Breed* v. *Eastern Railroad*, 5 Gray, 470, *n.*

The St. of 1881 provides a remedy for mortgagors and mortgagees, by adopting for them, in all cases, the statutes which had previously applied only in cases where land had been taken by railroad corporations. St. 1874, *c.* 372, §§ 76, 77. Pub. Sts. *c.* 112, §§ 108, 109. Under these sections, the mortgagors and mortgagees may join in the petition, or such petition may be initiated by either party. All petitions are to state all mortgages known to exist on the premises, and the tribunal to which the petition is presented " shall order the petitioner to give notice thereof to all parties interested as mortgagors or mortgagees."

In the case at bar, the presiding judge ruled that the plaintiffs had a complete and adequate remedy at law under the statute, and had no right in equity to relief against the mortgagor, to

whom the whole damages had been awarded. This was, in effect, a ruling that the remedy given to a mortgagee by the St. of 1881 is to the exclusion of any other, and that, by reason of the fact that he may begin a petition himself, he can make no claim to the damages recovered by the mortgagor. It does not appear in the case at bar, that the plaintiffs were made parties to the petition of the mortgagor, or that any such notice was given to them as the statute contemplates, or that they, or either of them, had any actual notice of its pendency before the hearing upon the petition. It may well be, that, if a mortgagee made a party to a petition, and properly notified thereof, should see fit not to take part therein, and should thus avoid the responsibilities and expenditures belonging to him as a party, it could properly be held that he had waived any claim to the damages which the mortgagor might recover. In such case, it would be a reasonable construction of the statute that the proceeding excluded him from the equitable remedy against the mortgagor which he formerly had. But it should not go further than this.

The mortgagee out of possession cannot be expected to have that full knowledge of the condition of the mortgaged premises possessed by the mortgagor. To construe the statute as excluding him from any remedy except that which it provides, because it authorizes him to begin a petition himself, might often do him serious injustice. The sections of the statute under consideration give to the mortgagor and mortgagee the rights there conferred, in express terms, "in addition to their rights under the mortgage," and the right in equity which the mortgagee had to have the damages received from the taking of the land applied to the liquidation of his debt should not be taken away unless he has been made a party to the proceeding by which they have been appropriated to the mortgagor. The proceedings in the case at bar do not, therefore, exclude the assignees of the mortgage from their remedy in equity against the mortgagor.

There remains the question whether the facts disclose such laches on the part of the plaintiffs that they cannot properly maintain the equitable remedy they seek. It was found and ruled by the presiding judge, that there had been no such laches as would bar the plaintiffs from seeking equitable relief; that

there had been no actual or intentional waiver by the plaintiffs, or those under whom they claimed, of any right to have the damages applied to the satisfaction of the mortgage. The judge was, on the facts, authorized thus to find. Newton, the administrator, held the mortgage unforeclosed on account of the controversy between Aldrich and Prentiss. W. L. Wood knew of the taking of the brook, but was not then an owner of the mortgage. It does not appear that either of the other owners did so. Neither of the plaintiffs is shown to have known of any rights which they had to collect damages, and, although W. L. Wood was informed of Aldrich's petition, it was when the case was actually on trial, no opportunity of preparation therefor being given to him. *Decree dismissing bill reversed.*