BENJAMIN E. BATES *vs.* BOSTON ELEVATED RAILWAY COMPANY & others.

Suffolk.    June 21, 1904. — January 18, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Boston Elevated Railway Company. Damages. Equity Jurisdiction*, To redeem chose in action, Marshalling of liens, Subrogation. *Mortgage.*

The persons entitled to damages from the Boston Elevated Railway Company under St. 1894, c. 548, § 8, are those having the interests described in the statute at the beginning of the construction of the railway of that company upon or in front of the premises for injury to which the damages are claimed.

It is no defence to a bill in equity by a third mortgagee of land who has filed a petition under St. 1894, c. 548, § 8, for damages from the construction and operation of the railway of the Boston Elevated Railway Company, seeking to compel the first mortgagees of the same property to enforce payment of their debts out of the land before resorting to the damages from the railway company, and offering to redeem from the first mortgages, that before the filing of the bill the land was sold subject to the first mortgages under the foreclosure of a second mortgage, the plaintiff being present at the sale and declining to bid. Such a sale does not deprive the plaintiff of his right to redeem the chose in action.

A bill in equity by a third mortgagee of land, who has filed a petition under St. 1894, c. 548, § 8, for damages from the construction and operation of the railway of the Boston Elevated Railway Company, to redeem the claim against the railway company from underlying first mortgages, is not defeated by the entry of judgments in the Superior Court, after the filing of the bill, upon petitions of the first mortgagees giving them the entire damages assessed, or by the payment of these judgments, as under R. L. c. 48, § 114, and R. L. c. 111, §§ 112, 113, the court of law must assess entire damages and give judgment to each mortgagee in the order of his mortgage to the amount unpaid thereon, and has no jurisdiction to inquire into or adjust equitable rights, and the first mortgagees hold the payments received from the railway company subject to the plaintiff's right to have the burden of the first mortgage debts equitably apportioned between the land and the fund received as damages.

In a suit in equity by the holder of a third mortgage who has filed a petition for damages to his interest under a statute giving the right to such damages for injuries caused by the construction and operation of an elevated railway, against the holder of an underlying first mortgage to whom the entire damages assessed for the injury to the property have been paid, to compel him to collect his debt from the land instead of resorting to the damages, and seeking to redeem the claim for damages, if the plaintiff pays the first mortgage debt he is entitled to be subrogated to the rights of the first mortgagee both as to the land and the damages. If before the filing of the bill the land has been sold subject to the first mortgage under the foreclosure of a second mortgage, the plaintiff as against the purchaser of the land at the foreclosure sale can set up the lien of the first mortgage for such proportion of the first mortgage debt as the value of the land bears to the value of the fund received as damages.

BILL IN EQUITY, filed in the Superior Court on November 6, 1903, by the holder of a third mortgage upon four lots of land numbered 1686, 1688, 1690 and 1692 on Washington Street in Boston, who had filed a petition against the Boston Elevated Railway Company under St. 1894, c. 548, § 8, for damage to his interest in the land from the construction and operation of the railway of that company, against the railway company, George F. Blake, Edward C. Turner and the Boston Five Cents Savings Bank, respective holders of first mortgages on different portions of the property, Alfred P. Green, the former holder of a second mortgage on all the property and the purchaser of the

equity of redemption at a foreclosure sale under his mortgage, and Benjamin A. Ball alleged to be the real owner represented by Green, all of these mortgagees and owners having filed petitions against the railway company for damages under St. 1894, c. 548, § 8; praying that the liens of the several defendants other than the railway company should be marshalled and those defendants ordered to enforce them against the land before resorting to their claims for damages against the railway company; that the plaintiff should be subrogated to the rights of the defendants under their respective mortgages to the extent of the amount received by them from the railway company and the extent of the plaintiff's claim; that the railway company should be enjoined from making settlements with the other defendants or paying them any damages until the plaintiff's rights should be determined; and for further relief.

In the Superior Court the case came on to be heard before *Gaskill,* J. upon the bill and the demurrers, pleas and answers of the several defendants and a general replication. At the request of the parties, the facts being admitted, the judge reported the case for determination by this court, such decree to be entered as law and equity might require.

The following statement of the plaintiff's contention was contained in the report:

The plaintiff contended that as mortgagee he had been greatly damaged, in that the value of his security had been wiped out and that he had a claim against the defendant railway company for compensation because of the damage caused by the location, construction, maintenance and operation of the elevated road, and a lien on the amount recovered; that, as he had lost his lien on the premises by reason of the foreclosure, and as the first mortgagees retained the security of their respective mortgages and also had a prior equity in the fund recovered from the railway company which they had enforced, he was entitled to be subrogated to the rights of these mortgagees under their respectives mortgages to the extent of his claim upon tendering to them the balances still unpaid upon their respective mortgages, which the plaintiff offered to do.

St. 1894, c. 548, § 8, is as follows: " The location, construc-

tion, maintenance or operation of said lines of railway in any public or private way shall be deemed an additional servitude and entitle lessees, mortgagees and other parties having an estate in such way or in premises which abut thereon, and who are damaged by reason of the location, construction, maintenance and operation of said lines of railway, to recover reasonable compensation in the manner herein provided. Any such person may at any time within three years after the construction of such railway upon or in front of his premises, file in the clerk's office of the Superior Court for the county where his said premises lie, a petition setting forth his claim and the amount thereof against said corporation. He shall give to said corporation fourteen days' notice of the filing of such petition, and answer thereto shall be filed by said corporation within thirty days after the return day of such notice."

The case was submitted on briefs at the sitting of the court in June, 1904, and afterwards was submitted on briefs to all the justices.

*B. E. Bates & J. D. Colt,* for the plaintiff.

*G. C. Travis & C. B. Gleason,* for the railway company.

*S. J. Elder & E. A. Whitman,* for the defendants Blake, Turner, Green and Ball.

*C. F. Kittredge,* for the Boston Five Cents Savings Bank.

*L. S. Dabney & E. M. Parker,* by leave of court, filed a brief on behalf of the trustees under the will of James Parker.

*J. R. Dunbar, H. M. Williams & H. M. Davis,* also by leave of court, filed a brief on behalf of the trustees of the Terminal Hotel Trust, and on behalf of the Hammond Hotels Company, lessee of those trustees.

LORING, J. The plaintiff in this bill in equity held a third mortgage on four lots of land in respect of which compensation was due under St. 1894, c. 548, and St. 1897, c. 500, for injury done to it by the location, construction, maintenance and operation of the elevated railway. There were four first mortgages, one upon each of four lots which made up the estate covered by the plaintiff's mortgage. As matter of convenience these will be spoken of as the first mortgages. After petitions for compensation had been brought by the plaintiff, by the owner of the equity, and by one of the three first mortgagees, the second mortgage

was foreclosed. Thereupon this bill was brought to have the first mortgagees directed to enforce payment of the amounts severally due them out of the land before resorting to the compensation due, or if they were allowed to resort to the compensation fund, the plaintiff might be subrogated to the lien of the first mortgages, which at the trial the plaintiff offered to redeem.

It appeared at the hearing that after the bill now before us was brought the petitions for compensation came on for trial, that a verdict was rendered by agreement for $17,500 as the damages to the mortgaged premises as a whole, and that judgments were entered directing $4,375 to be paid to each of the four first mortgagees. It also appeared that these judgments had been paid.

It was agreed that the value of the premises before the construction of the elevated railway was begun exceeded the amount of the first and second mortgages, and that at the time of the foreclosure of the second mortgage " the rental value of said premises had been greatly decreased and the rentals of said premises, if fully occupied, then amounted approximately to the sum of $6,960 per year and the yearly expenses, including interest on the mortgages underlying the plaintiff's, amounted approximately to $7,200. These facts were then known to the plaintiff and influenced him in deciding not to bid in the property, although present at the sale, and of sufficient financial ability to have purchased the property had he thought it advisable so to do."

The case is here on a reservation made by the Superior Court.

The first defence set up is that the mortgage to the plaintiff was made after the date when the right to compensation accrued, and for that reason he has no claim on that fund for injury to the land described in the bill.

The question of the date when the right to compensation accrues under St. 1894, c. 548, as amended by St. 1897, c. 500, is a question of great practical importance affecting parties in other cases. For this reason the court has taken briefs from persons not parties to this suit, whose rights are affected, and the question has been ably and exhaustively argued.

The defendant railway has argued with great confidence that

the parties now entitled to compensation are those who owned the property when the right came into existence to do that for which compensation is given, and that in the case at bar this was on July 11, 1898, when the plans of the railway were approved by the railroad commissioners, " showing the form and method of construction proposed and the proposed location of the tracks, elevated structure and stations, with such detail as may be necessary to show the extent to which any street, way, avenue, bridge, public or private lands are to be encroached upon " ; for upon such approval the railway company's right to erect the structure described in those plans opposite the premises in question and to operate a railway upon it became complete by force of St. 1897, c. 500, § 6. As to the clause of § 8 of St. 1894, c. 548, which provides that if a petition for compensation is brought it must be brought " at any time within three years after the construction of such railway upon or in front of his premises," the defendant railway's contention is that this is a limitation on the time when the action which had previously accrued must be brought, being in this respect somewhat analogous to the provision introduced into the highway act by St. 1842, c. 86, (extended by St. 1847, c. 259, § 4, to cases where selectmen laid out town ways,) in which it was enacted that the damages should not be paid until an actual entry was made on the land taken for the purpose of constructing the way, although the damages were due as soon as the way was laid out, and even though it never was built. *Harrington* v. *County Commissioners*, 22 Pick. 263. See also *Hallock* v. *Franklin*, 2 Met. 558.

In support of this contention this defendant also refers to the rule in case of railroads, namely, that the owner at the time of filing the location of the railroad is the person entitled to compensation ; *Charlestown Branch Railroad* v. *County Commissioners*, 7 Met. 78 ; *Hampden Paint & Chemical Co.* v. *Springfield, Athol & Northeastern Railroad*, 124 Mass. 118 ; and it contends that this result was reached, in case of both highways and railroads, by the application of the rule for which it contends here, namely, that the persons entitled to compensation are those who own the property when the right becomes complete to do the thing for which compensation is given. It further contends that this is an established principle of law applicable to all cases.

where compensation is due by reason of the exercise of the power of eminent domain.

But the result arrived at in case of railroads and public ways was not reached by the application of a general principle of law; it was reached as a matter of the interpretation of the provisions adopted by the Legislature in the statutes there in question.

It was provided by Rev. Sts. c. 24, § 11, (under which the first case as to highways arose, *Harrington* v. *County Commissioners*, 22 Pick. 263,) that the county commissioners, in laying out a highway, should estimate the amount of damage sustained by any persons and should state the amount thereof in their return laying out the way ; and also that if an application should be made for a jury to revise their award of damages it must be made within six months thereafter.   Rev. Sts. c. 24, § 14.   As matter of construction of that act the *punctum temporis* was held to be the lay out of the way.   See also *Harding* v. *Medway*, 10 Met. 465 ; *Loring* v. *Boston*, 12 Gray, 209 ; *Edmands* v. *Boston*, 108 Mass. 535, 547.   With the modification introduced by Sts. 1842, c. 86, and 1847, c. 259, § 4, already referred to, the provisions of the Revised Statutes were re-enacted in Gen. Sts. c. 43, §§ 14, 22, 62, 63, and Pub. Sts. c. 49, §§ 14, 33, 68, 69, 70. It was changed in the Revised Laws.   It is there provided that no petition for a jury shall be brought until an entry is made upon the land taken for the purpose of constructing the way. R. L. c. 48, § 28 ; see also §§ 68, 80.

The rule in case of railroads was originally established by a decision as to when the three years within which a petition had to be brought began to run under Rev. Sts. c. 39, § 59.   This statute provided that " no application to the commissioners to estimate said damages for land or property hereafter to be taken shall be sustained unless made within three years from the time of taking the same " ; and it was held as matter of construction that the taking was the written location which had to be filed by the railroad company in the registry of deeds, defining the courses, distances and boundaries of the railroad location. *Charlestown Branch Railroad* v. *County Commissioners*, 7 Met. 78.   In the subsequent case of *Hampden Paint & Chemical Co.* v. *Springfield, Athol & Northeastern Railroad*, 124 Mass. 118, it was held that the date as of which the damages were to be assessed was the date of filing the location.

In case of the lay out of a public way and the location of a railroad a formal act of taking has to be made by the body which is authorized to exercise the power of eminent domain, and there was in each case (when the rule was established) a provision limiting the time within which a petition for compensation could be brought to so many months or years from that act — the return in case of highways and the location in case of railroads.

But there is another class of statutes, namely, statutes where the body empowered to act under the right of eminent domain is not required to make a formal taking, and where either the Legislature has expressly provided that the time within which a petition for compensation can be brought is to run from actual physical interference on the part of the person or body empowered to act under the power of eminent domain or this conclusion has been reached by the court as matter of construction. To this class belong *Ipswich Mills* v. *County Commissioners*, 108 Mass. 363, and *Heard* v. *Proprietors of Middlesex Canal*, 5 Met. 81, two of the cases relied on by the defendant railway ; to which may be added *Call* v. *County Commissioners*, 2 Gray, 232.

A collection of statutes, where towns and other bodies have been authorized to take water without any formal act of taking, is to be found in *Gloucester Water Supply Co.* v. *Gloucester*, 179 Mass. 365, 375, 376. For example, the time provided for filing a petition for compensation for the taking of water rights by the plaintiff corporation in *Gloucester Water Supply Co.* v. *Gloucester* was "within three years from the time the water is actually withdrawn or diverted," and it is there stated that such " is a common, if not a usual, form of limitation of such petitions." See p. 377.

In case of the elevated railway the Legislature might perhaps have considered as a taking the approval by the railroad commissioners of the plans specifying the kind of structure to be built, although that was not the primary purpose of that approval. But the Legislature did not do so. It provided that the time within which a petition for compensation should be brought should run neither from a taking nor from the approval of the plans by the railroad commissioners. What it did provide was that such a petition may be filed by a person entitled

to compensation "at any time within three years after the construction of such railway upon or in front of his premises." In other words, the Legislature put the statute into the class of statutes where no taking is required, and where the time runs from the physical interference with the rights for which compensation is given. And as matter of construction we are of opinion that that is the time when the person entitled to compensation is to be ascertained, following the reasoning in *Charlestown Branch Railroad* v. *County Commissioners*, 7 Met. 78, and *Hampden Paint & Chemical Co.* v. *Springfield, Athol & Northeastern Railroad*, 124 Mass. 118, and the result as well as the reasoning reached in *Ipswich Mills* v. *County Commissioners*, 108 Mass. 363; *Heard* v. *Proprietors of Middlesex Canal*, 5 Met. 81, and *Call* v. *County Commissioners*, 2 Gray, 232.

It follows that under St. 1894, c. 548, and St. 1897, c. 500, the physical construction of the railway upon or in front of the premises in respect of which compensation is claimed is the date to be taken in determining who are entitled to compensation therefor.

The language of the act means on the face of it within three years after the construction at the point in question is completed. But it is apparent that the process of constructing the elevated structure in front of a store or a house probably would last some time. As matter of fact the work of laying the foundations opposite the premises in question began May 4, 1899, and was completed on May 11, 1899. The erection of the superstructure was begun on November 16, 1899, and was completed March 15, 1901, a period of one year and four months. The first train was run on May 1, 1901.

It is apparent that the buildings abutting on the streets through which the elevated railway could be built must have been largely in the hands of tenants, and also that this was recognized by the Legislature. "Lessees" are specially mentioned in the act (St. 1894, c. 548, § 8) as persons entitled to compensation. If we were to adopt as the true construction of the act the meaning which the words used bear on their face, compensation for loss of light and air during construction could not be claimed, and a lessee whose lease expired after the construction had been going on for over a year but yet expired just before the

construction was completed would not be paid, although he may have suffered a serious damage of the kind for which by the act compensation is to be made. The act contemplates that compensation shall be made for damage done by construction apart from damage done by maintenance and operation. The first line of the act is in the disjunctive and the effect of that is not affected by the use of the conjunctive in the following sentence.

For these reasons we are of opinion that the date must be held to be the beginning of the construction of the railway. In the case at bar that date is May 4, 1899. The result in the case at bar is that the mortgage to the plaintiff was executed four months before the date when damages accrued under the act, and the first defence here set up fails. The plaintiff was a mortgagee within St. 1894, c. 548, § 8.

The defendants' next contention is that all rights of the plaintiff (the third mortgagee) were cut off by the foreclosure of the second mortgage. But a majority of the court are of opinion that this position is not well taken.

Where land taken or otherwise affected by the exercise of the power of eminent domain is under a mortgage or mortgages when compensation therefor becomes due, the compensation, in the absence of any statute on the matter, is at law the property of the mortgagor. *Breed* v. *Eastern Railroad*, 5 Gray, 470, n. *Farnsworth* v. *Boston*, 126 Mass. 1. In equity, however, the mortgagee can follow the land taken, and subject the proceeds, i. e. the compensation fund, to a lien for the payment of the mortgage debt due to him. This was decided in *Wood* v. *Westborough*, 140 Mass. 403. The doctrine is not one peculiar to cases where land is taken under the power of eminent domain. It rests upon the principle that although the land has been taken out of the mortgage by the paramount power of eminent domain, yet in equity the proceeds, that is to say, the compensation due, remains land and can be subjected to a lien for the payment of the mortgage debt. The doctrine is one of general application. The cases on it in this Commonwealth are collected in *Worcester* v. *Boston*, 179 Mass. 41, 50, and *Knowles* v. *Sullivan*, 182 Mass. 318.

But this matter has been regulated to some extent by statute. The first act on the subject was St. 1855, c. 247. That act gave

to the court of law in which a petition for compensation was pending jurisdiction to administer this equitable right in all cases where the land mortgaged was taken for railroad purposes; and by St. 1881, c. 110, the provisions of that act were extended to all cases of mortgaged land taken for public uses under authority of law. These statutes followed and seem to have been caused by the decisions in *Breed* v. *Eastern Railroad*, 5 Gray, 470, n., and *Farnsworth* v. *Boston*, 126 Mass. 1, already referred to.

The effect of these enactments was settled in *Wood* v. *Westborough*, 140 Mass. 403. It was there held that they did not create new rights but gave to the court of law in which the compensation due was recovered jurisdiction to administer this equitable right of the mortgagee.

Such being the effect of the previous general act applying to all cases where mortgaged land was taken for public uses under authority of law, (St. 1881, c. 110,) the question arises whether the right to compensation given to mortgagees by St. 1894, c. 548, § 8, is the same or another and different right. We are of opinion that it is the same and not another or different right. It could not have been the intention of the Legislature, by mentioning mortgagees in § 8 of St. 1894, c. 548, to break in on the general system which previously had been adopted for all cases where mortgaged land is taken for public uses, and to give to mortgagees of land in respect of which compensation is due by reason of the elevated railway another and different right. Inasmuch as compensation is given by St. 1894, c. 548, for injury to what was not or may not have been a common law right, it was proper to mention mortgagees in § 8 and in that way to avoid any question of the statute's applying in case of a mortgage on land of an abutter who did not own the fee in the street, having regard to the language of St. 1881, c. 110, which in terms refers to land taken for public uses only.

This brings us to a consideration of the respective rights of the parties at law and in equity in the case at bar.

After a part of a parcel of land covered by a mortgage is taken for public uses, all that remains subject to the mortgage is the remaining land not taken. When the part taken is taken for public uses, the mortgagee's title to it is wiped out and the land

taken is no longer subject to the mortgage; it has been withdrawn from the operation of the mortgage by title paramount. That is the situation at law. It follows that at law, in case the mortgagee undertakes to foreclose the mortgage by sale, all that is to be sold is the remaining land. That is all that remains for the mortgage to operate on as a common law conveyance, and it is as a common law conveyance that it is to be foreclosed. So far as the question is concerned what property it operates on, it is immaterial whether it is foreclosed by an entry *in pais*, a writ of entry, or a sale under a power. In equity, however, the mortgagee has a right to follow the land into the chose in action for the compensation due, and to subject that chose in action for the compensation due to a lien for the payment of the mortgage debt due to him. But that is an equitable lien which the mortgagee has in addition to his common law mortgage on the remaining land. See in this connection *Home Ins. Co.* v. *Smith*, 28 Hun, 296, 300, 301. It was held in *Gates* v. *de la Mare*, 142 N. Y. 307, that the right to the compensation due passed to a purchaser under a foreclosure sale. But in another case of land taken for the construction of the same street it was held that a conveyance of the land after the taking transferred the right to the compensation. *Magee* v. *Brooklyn*, 144 N. Y. 265. That is not the law in this Commonwealth. And apparently it is not law in New York, for it was said by O'Brien, J., in the latter case, that "The case has always been considered as *sui generis*, and the rights of the parties determined according to the peculiar facts and circumstances upon equitable principles." p. 268.

The situation is the same in the case at bar where the compensation is due for injury done the estate in place of being due for a taking of a portion of the land mortgaged. What was left after the land mortgaged was injured by the elevated railway was the land subject to the injury done by the elevated railway, which for convenience may be spoken of as the remaining land.

Before the foreclosure of the second mortgage took place, in the case at bar, the plaintiff as third mortgagee had a right to redeem the land which was subject to the first and second mortgages, and a right to redeem the chose in action for the compensation due, which also was subject to an equitable lien in favor of the first and second mortgagees. The two rights of redemp-

tion were independent of each other in the same way that they would have been had they originally been brought into being by a mortgage at law on the land and an equitable lien on the chose in action for compensation due.

If the plaintiff thought that the sum bid at the foreclosure sale for the equity of redeeming the remaining land from the incumbrance of the first mortgage (which was all there was for sale in the foreclosure of the second mortgage) was as much as the remaining land subject to its share of the burden of the first mortgages was worth, he had a right to let that security be realized for payment of the second mortgage debt and to rely on his equitable lien on the chose in action for payment of the third mortgage debt due to him. See *George* v. *Wood*, 11 Allen, 41, where it was held that after a foreclosure of one of two parcels of land covered by the same mortgage the mortgagor could redeem by paying the balance of the debt due after deducting the value of the parcel foreclosed.

After the foreclosure of the second mortgage, the second mortgage debt was paid by the proceeds of the sale of the equity of redeeming the land from the first mortgages subject to the injury done by the elevated railway, which for convenience has been spoken of as the remaining land. That left the plaintiff with no rights in the remaining land, but with an equitable lien on the chose in action for the compensation due, subject only to the equitable lien of the first mortgagees thereon.

It was at this time that the bill now before us was filed.

The defendants contended that the right to redeem the chose in action for the compensation due, which the plaintiff had when the bill was filed, was lost when the Superior Court entered judgments in favor of the first mortgagees in the petitions to recover the compensation due; that the plaintiff was a party to those petitions, was in court at the time and made no objection to the entry of those judgments; that this appropriation is binding on the plaintiff and is final; and that by the payment under the judgment, if not by the judgment itself, the plaintiff's right in the chose in action came to an end. See Romer, J. in *Flint* v. *Howard*, [1893] 2 Ch. 54, 60, as to an appropriation by payment to a first mortgagee cutting off the right of a junior incumbrancer to redeem.

But we are of opinion that neither the action of the Superior Court in rendering judgments for the first mortgagees nor the payment under it has cut off the plaintiff's right in the fund. A judgment entered by the Superior Court under R. L. c. 48, § 114, (re-enacting St. 1881, c. 110,) and R. L. c. 111, §§ 112, 113, (re-enacting St. 1855, c. 247,) is ordinarily final and binding on the persons who are parties to the petitions. See *Wood* v. *Westborough*, 140 Mass. 403, 410. But the jurisdiction given by these statutes to courts of law to administer the equitable rights of the mortgagee in regard to the compensation due in respect of the mortgaged land is a restricted one. Under the statutes no discretion is given to the court of law. The statutes are mandatory that judgment shall be entered in favor of the several mortgagees in the order of their priority. The court of law has no jurisdiction to inquire into and adjust the equitable rights, if any, between the several mortgagees. where the mortgage debts are also secured by liens on other funds. If such rights exist they must be enforced by a court of general equity jurisdiction. The Superior Court therefore was right in refusing to postpone the trial of the petitions for compensation until the bill in equity now before us was heard, on the ground that the plaintiff's rights would not be prejudiced thereby. The plaintiff's right to redeem was preserved by the fact that the bill now before us was pending when the judgments were rendered.

The answer to the contention that the payment ended the plaintiff's rights is the same. While this bill was pending the first mortgagees ought not to have applied, in reduction *pro tanto* of the respective debts due them severally, the money paid to them, and if the statement in the report is to be taken to mean that they have done so in fact, since they ought not to have done so, they must stand, as against the plaintiff in this bill in equity, as not having done so.

To redeem, the plaintiff must pay the whole of the first mortgage debt. On so doing, had the mortgagor been the only other person interested, he would have been subrogated to the lien of the first mortgagees, and could have set up those mortgages for the amounts due thereon respectively, without regard to the payments made by the elevated railway. But the plaintiff seeks to set up the first mortgages and throw the whole burden of pay-

ing the first mortgage debts not on the mortgagor but on the purchaser of the land at the foreclosure sale under the second mortgage.  There is no reason why the whole burden of the first mortgage debts should be borne by the land now owned by the defendant Green who bought it at the foreclosure sale under the second mortgage rather than by the plaintiff who has a lien on the chose in action for the compensation due; and conversely there is no reason why it should be borne by the plaintiff rather than by Green, unless the sale was made under some condition which does not appear in the agreed facts before us.  Their rights in this respect are equal, and the burden of the first mortgages should be apportioned between the land and the compensation fund, proportionally to the value of the land subject to the injury done by the elevated railway free of incumbrances and the amount of the compensation fund due for that injury. The case comes within *Flint* v. *Howard,* [1893] 2 Ch. 54; *Barnes* v. *Racster,* 1 Y. & C. Ch. 401; *Bugden* v. *Bignold,* 2 Y. & C. Ch. 377.

In the opinion of a majority of the court there must be a decree accordingly.

*So ordered.*