FRED J. TABER *vs.* CITY OF BOSTON.

SAME *vs.* NEW ENGLAND RAILROAD COMPANY.

Suffolk.   November 13, 1905. — January 3, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Damages.   Grade Crossing Acts.   Mortgage,* Of real estate.   *Evidence.*

A mortgagee of land not in possession, who has no other title to the land, cannot recover damages for the taking of the land under St. 1900, c. 453, confirming a report of commissioners abolishing certain grade crossings in Boston, under a petition which alleges that he is the owner of the unincumbered fee and does not follow the requirements of R. L. c. 111, §§ 112, 113, in regard to petitions by mortgagors and mortgagees.

A mortgagee of land not in possession, who has filed a petition for damages for the taking of the land in the abolition of a grade crossing, in which he has alleged that he is the owner of the unincumbered fee, cannot be allowed to show that he made an agreement partly oral and partly by letter with the mortgagor for the purchase of the equity of redemption under which he made certain payments on account of the purchase price, and thus became entitled to damages as owner of the equity of redemption, if it appears that the agreement between the parties was executory and finally was reduced to writing and embodied in a bond for a deed of the land which was executed and delivered after the taking.

A mortgagee of land not in possession under the mortgage, who has filed a petition for damages for the taking of the land in the abolition of a grade crossing, in which he has alleged that he is the owner of the unincumbered fee, cannot prove a possessory title sufficient to maintain the petition by showing that he went upon the land, placed a stone crusher on it, did some work there getting out stone, apparently under a license from the mortgagor, and had negotiations with the mortgagor about buying the property, which after the taking ripened into a bond for a deed of the land.

SHELDON, J.   These are petitions for the assessment of damages to the petitioner's property in Boston caused by the abolition of the grade crossing of Blue Hill Avenue and Oakland Street by the New England Railroad and the consequent changing of the grade of Oakland Avenue and other streets.

The petitions as amended recited that the petitioner, on April 12, 1901, " was and now is the owner of unincumbered fees in the following lots of land," describing several parcels of land by their numbers as shown on a plan mentioned, and including lots numbered 24, 25, 41, 55, 56, 57, 58, 59, on said plan. The parties agreed at the trial that the petitioner's damages should be assessed one half against each respondent.

It appeared at the trial that on the petition of the mayor and board of aldermen of the city of Boston a commission had been appointed by the Superior Court for the abolition of these grade crossings, and the commissioners made and filed their report on June 25, 1900 ; this report was confirmed by the St. of 1900, c. 453 ; and on April 12, 1901, the mayor of the city of Boston, under that statute, filed in the registry of deeds for the county of Suffolk a plan and statement signed by him showing the lands and rights taken and the alterations to be made ; and both parties agree that the date of this filing is the date of the taking, and that the petitioner's rights were then fixed and his damages are to be determined as of that date.

It appeared that the petitioner at the time of the taking was the owner in fee of all the land described in his amended petitions, except the lots added by the amendments, being lots numbered 24, 25, 41, 55, 56, 57, 58 and 59, called the Hartleb lots. These lots he had sold and conveyed to a Mrs. Hartleb of Maine, by deed dated March 6, 1895, and duly recorded six days later. In payment of the purchase money Mrs. Hartleb paid him about $6,000 in money, and she and her husband also gave to him their note for $2,000 dated March 9, 1895, and payable in two years from that date, secured by a mortgage on these lots, also dated March 9, 1895, and recorded at the same time as his deed to Mrs. Hartleb.

The jury found in each case for the petitioner, and found specially in each case that the damages to his property other than the Hartleb lots were $8,850 ; that of the Hartleb lots the damages to lots 24, 25 and 41 were $1,770 ; and that there was no damage to lots 54 to 59, inclusive, — these amounts being in each case for one half of the petitioner's total damages. Thereupon the judge ruled that the damages assessed by the jury for lots 24, 25 and 41 could not be recovered upon the petition as

now framed, and directed judgment accordingly, and the case is here upon the petitioner's exception to this ruling, with a statement in the bill of exceptions that if the ruling and order are erroneous judgment is to be for the full amount of damages as assessed by the jury.

After the bill of exceptions was filed and before it was allowed, agreements were made between the petitioner and each respondent separately, which it was stated were substantially a duplicate of an exhibit attached to the bill, which agreements are made a part of the exceptions. The exhibit reads as follows :

" Taber *v.* City of Boston.

" Whereas after a trial before a jury of the Superior Court in Suffolk County the jury made a finding of seventeen hundred and seventy dollars for lots twenty-four, twenty-five and forty-one, and of eight thousand eight hundred and fifty dollars for damage to the rest of the property ; and

" Whereas the court ruled that the petitioner could not, under his petition, recover damages for lots twenty-four, twenty-five and forty-one, and ordered a verdict to be rendered on said finding of eight thousand eight hundred and fifty dollars ; and

" Whereas it was desired by both parties to settle the amount of said verdict as so ordered by the court ; and

" Whereas the defendant city has paid to the plaintiff said sum of eight thousand eight hundred and fifty dollars with interest on the same from March 25, 1904, to date, together with the costs of suit ;

" It is agreed that said sums were received in full satisfaction and discharge of all claims of the petitioner under said petition except his claims for damages to lots twenty-four, twenty-five and forty-one, and that his exceptions are hereby withdrawn except such exceptions as relate to the evidence as to said lots and the petitioner's right to recover the damages which came to said lots ; and it is agreed that if he does not successfully prosecute his said exceptions to the rulings of the court excepted to, such entry may be made as the court deems proper, and that if the Supreme Judicial Court decides that petitioner can recover for damages sustained by said lots twenty-four, twenty-five and forty-one then such entry is to be made as the court deems proper.

" Received of the City of Boston the sum of $      being $8,850.00 with interest thereon from March 25, 1904, to date, the same being the unquestioned amount of damages and interest in the verdict of said date and $     being costs of suit, on a petition by Taber *v.* The City of Boston to recover damages to his property on account of the abolition of the grade crossings of Blue Hill Avenue, Oakland Street and the New England Railroad Co. The above amounts being the finding of a jury of the Superior Court of the unquestioned damages and costs of suit which came to the estate of said Taber in consequence of the abolition of said grade crossings."

It accordingly appears that the petitioner, on April 12, 1901, when the damages upon these lots accrued, held no title to them by deed other than as a mortgagee; that he had made no entry under this mortgage; and that according to the record title his rights are simply those of a mortgagee not in possession. The first question consequently is whether as such mortgagee he can recover damages under these petitions.

The rights of the mortgagee as such to recover for damages caused by a taking of the mortgaged property under a public right have been so recently and so fully considered by the court that there is no occasion again to go over this ground. See *Bates v. Boston Elevated Railway*, 187 Mass. 328, 337 *et seq.*, and cases there cited. It is now settled that his right to maintain such petitions as these depends entirely upon statute. R. L. c. 48, § 114; c. 111, §§ 112, 113. This makes it unnecessary to consider the nature of the estate of the mortgagee, or the extent of his rights either against the mortgagor or as to third parties, and makes a large part of the petitioner's elaborate argument and many of the decisions referred to by him immaterial upon the question now under consideration. Outside these statutes, as pointed out in *Bates v. Boston Elevated Railway, ubi supra,* the mortgagee had simply the right to follow in equity the land taken and subject its proceeds, the compensation for the damages caused by the taking, to a lien for the payment of the mortgage debt due to him. And, as is also shown in the same case, p. 338, the statute did not give to the mortgagee any new rights, but gave to the court of law which had to assess the compensation jurisdiction

to protect and enforce his equitable right. It is accordingly provided that if the land is mortgaged, any petition for the estimation of such damages shall state all mortgages which are known to exist upon the property, and notice is to be given to all parties who are interested as mortgagors or mortgagees. R. L. c. 111, § 112. And § 113 further provides that " If mortgagors or mortgagees commence or become parties to such proceedings, entire damages shall, upon final judgment, be assessed for the property taken, and such portion thereof shall be ordered to be paid to every mortgagee who is a party in the order of his mortgage, as is equal to the amount then unpaid thereon, and the balance to the mortgagor; and separate judgment shall be entered accordingly for each mortgagee, who shall hold his judgment in trust, first, with any proceeds realized thereon, to satisfy his mortgage debt, and, after such debt is in any way satisfied, to assign the judgment or pay over any balance of proceeds to the mortgagor or other person entitled thereto." It is manifest that these provisions contemplate an entirely different petition and wholly different proceedings from those adopted in the case at bar. And although these are doubtless enabling statutes made to give a further and more extensive remedy than theretofore was available, yet in view of the fact that the mortgagee before the enactment of the statutes had no right, either alone or with the mortgagor, to bring or to prosecute any petition for the recovery of such damages, his right cannot be extended beyond the terms of the statutes. The language used by the Legislature is affirmative and permissive, but strictly limiting the nature of the proceedings allowed. *Commonwealth* v. *Smith,* 10 Allen, 448, 457. The petitioner cannot recover as mortgagee.

But the petitioner claims that by an oral agreement he had repurchased from Mrs. Hartleb the equity of redemption. The evidence admitted falls far short of showing such an agreement. The petitioner testified that in 1899, in a talk with Mrs. Hartleb in Maine, he asked her " What she would let us go on to these lots here, in regard to getting off stone," and that she said she would sell the property to him under certain conditions, and that he agreed, made her a proposition, and asked her what she would take for the property and she said she did not know, and

wanted him to make a proposition; that he did so, and in the summer of 1901, which must have been some time after the taking, she gave him a bond for a deed of the property. (It afterwards appeared that this bond was dated August 1, 1901.) He also testified that after a talk with Mrs. Hartleb's husband, in the spring or summer of 1900, he "went on to the property, placed a stone crusher on it, and took possession of it and used it"; that he used the stone crusher for material there and worked there on the property getting out stone for a boulevard. This bond was offered in evidence, but was excluded, apparently because it was given after the taking, although afterwards admitted. Manifestly, on this evidence it could not be found that the petitioner had made any oral agreement with her for the purchase of the equity of redemption; and we need not consider what the effect of such an oral agreement would have been. R. L. c. 74, § 1, cl. 4; c. 127, § 3. Certainly the decisions in *Trull* v. *Skinner*, 17 Pick. 213, *Falls* v. *Conway Ins. Co.* 7 Allen, 46, and *Stone* v. *Jenks*, 142 Mass. 521, are far from maintaining the proposition contended for by the petitioner, that a mortgagee purchasing by oral agreement the right to redeem acquires the fee.

The petitioner contends however that evidence upon this issue was wrongly rejected. He testified that he made an agreement with Mrs. Hartleb in the last part of 1899 or 1900; that this agreement was in writing only so far as some letters passed between them, one of which she signed and sent back to him; that he had made diligent search for her letters and could not find them; that the agreement between him and her was contained in those letters. He was then asked to state the agreement; whether there was any agreement between him and her as to the price of the lots, and whether he had paid the taxes on this property at any time before 1901. The petitioner also offered to show what the price of the lots was, and what payments he had made on account of that purchase price. All this evidence was excluded, and the petitioner excepted. We think that all this evidence was excluded rightly; for it appeared that the agreement between the parties was finally reduced to writing and embodied in the bond of August 1, 1901, which merged all the agreements that led to it. This bond purported upon its face to contain the entire agreement between the parties. *Kin-*

*nard Co.* v. *Cutter Tower Co.* 159 Mass. 391, and cases there cited. It is to be observed that the petitioner did not seek to show an executed verbal agreement by which he became the owner of the equity of redemption, but merely to show the terms of an executory agreement, which appear to have been subsequently embodied in the bond which was given to him by Mrs. Hartleb; and it was wholly immaterial whether he had made any partial payments under such an agreement, whether as taxes or otherwise.

It follows that the petitioner cannot recover for the damages to these lots on the ground that he had become the owner of the equity of redemption.

The petitioner contends further that upon the evidence admitted and offered he had a good possessory title to the land, and so is entitled to the damages; and he relies on *State Lunatic Hospital* v. *Worcester County,* 1 Met. 437; *Hawkins* v. *County Commissioners,* 2 Allen, 254, 256; *Chandler* v. *Jamaica Pond Aqueduct,* 125 Mass. 544; *Andrew* v. *Nantasket Beach Railroad,* 152 Mass. 506. But we do not think that it appeared that the petitioner had a good possessory title. He held a mortgage under which he had not taken possession. He had gone on the property, placed a stone crusher upon it, and done some work there getting out stone, apparently under a license from the real owner or her husband. He had had negotiations with her about buying the property, which after the taking ripened into the bond for a deed which has been spoken of, under which he was to have a deed of the property upon paying $6,000 besides the mortgage which he held. He never disputed her title; there is nothing except his bringing these petitions to show that he ever asserted any claim other than that under his mortgage, or by her license. Such possession as he had was not under a claim of present title, but was under the right of Mrs. Hartleb, and subordinate to her paramount title. This is very much less than what was shown and passed upon in any of the decisions referred to. We are of opinion that he cannot recover the damages here in question on the ground of a possessory title.

The result is that on this record the petitioner's exceptions must be overruled. Whether any amendment can be made that

will be of avail to him, and whether he shall be allowed to make any amendment if he shall ask leave to do so, are questions to be passed upon by the Superior Court.

*Exceptions overruled.*

*J. C. Ivy,* for the petitioner.
*T. M. Babson,* for the respondents.